# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| AARON KEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-cv-00956 |
| | ) | |
| SUMNER COUNTY SHERIFF'S | ) | Judge Sharp |
| OFFICE, SHERIFF SONNY | ) | |
| WEATHERFORD, individually and in | ) | |
| his official capacity, JORDAN YOHE, | ) | |
| Sumner County Corrections Officer | ) | |
| | | |
| Defendants. | | |

## MEMORANDUM

This litigation under 42 U.S.C. § 1983 arose after Plaintiff Aaron Key was shackled allegedly in violation of his Fourth, Eighth, and Fourteenth Amendment constitutional rights. In addition to federal claims, he brings state law negligence claims. Defendants have filed a Motion for Summary Judgment on all claims, to which Plaintiff has responded, and Defendants have replied. The Court will grant Defendants' Motion and this case will be dismissed.

## BACKGROUND

After Plaintiff was convicted of simple assault, in state court, he was taken to Sumner County Correctional Facility ("SCCF") on April 5, 2013. At the time, he had "skin grafts on his lower legs" (Docket No. 21 at 2) (internal quotation marks omitted) from a 2004 car accident that left him with "significant scarring, skin grafts, and one leg . . . shorter than [the other]."[1] (Docket No. 41 at 1).

---

[1] While it appears Plaintiff's complaint is about skin grafts, in his Amended Complaint, Plaintiff refers to his medical condition as "injuries to legs" (Docket No. 21 at 2, ¶ 4), "leg injury" (Docket No. 21 at 3, ¶ 6), and/or "skin grafts on [Plaintiff's] ankle." (Docket No. 21 at 4).

The day following his intake, he met with medical personnel at Southern Health Partners ("SHP")[2] but did not report a leg injury, skin grafts, or sensitivity to shackling on an "Admission Data / History and Physical Form." Nevertheless, Plaintiff asserts that during this intake process, nurses verbally informed him that a "do-not-shackle" slip, from his time as an inmate back in 2010, was in SCCF's database and would be followed. According to Plaintiff, he asked, "Don't I need a paper saying [do-not-shackle] so they don't shackle me?" to which a nurse allegedly replied, "[we] will get you one. But it is in our computers." (Docket No. 33-2 at 10). He claims that even though he did not have any medical order prohibiting him from being shackled, the nurses still informed him that he would not be.

On May 28, 2013, Plaintiff was shackled prior to a scheduled court date. Plaintiff claims the shackles were placed "too tight[ly]" around his "long legs" and that the shackles' chain "jerked" causing him to "trip and fall." (Docket No. 33-2 at 15-17). As a result of the fall, Plaintiff's skin grafts opened.

Plaintiff claims that Defendant Jordan Yohe was the one who shackled him, which Defendant Yohe disputes. Regardless, Plaintiff claims he told Defendant Yohe "[he does not] get shackles . . . [b]ecause [he has] skin grafts . . ." to which Defendant Yohe allegedly asked for an "order", which Plaintiff did not have (Docket No. 33-2 at 7). According to Defendant Yohe, if an inmate does not have a "do-not-shackle" slip, his training directs him to shackle the inmate unless there is an "open cut" or "open wound" visible. (Docket No. 33-4 at 14-15). Plaintiff's skin grafts were not bruised, cut, or open. Plaintiff has also previously walked with shackles and without experiencing injury.

_____

[2] According to Defendants, Southern Health Partners is contracted with Sumner County to provide medical care to inmates. (Docket No. 34 at 3).

After Plaintiff's "trip and fall", Plaintiff was seen by medical staff twenty-five times between May 29 and June 24 of 2013 for injuries to his skin grafts. In fact, on June 13, 2013, Plaintiff was transported from the SCCF to Sumner Regional Medical Center for additional wound treatment. Plaintiff, nevertheless, asserts that he was "denied medical treatment" (Docket No. 21) after his "trip and fall" because he did not meet with a physician until fifteen days after his incident.[3] (Docket No. 41).

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where a moving party without the burden of proof at trial seeks summary judgment, the movant "bears the initial burden of showing that there is no material issue in dispute." Lindsay v. Yates, 578 F.3d 407, 414 (6th Cir. 2009) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" Blizzard v. Marion Tech. Coll., 698 F.3d 275, 282 (6th Cir. 2012) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). "Reviewing the facts in the light most favorable to the nonmoving party, the court must ultimately determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

---

[3] In his Response, Plaintiff claims fifteen days elapsed until he saw a physician yet testified in his deposition that it was 28 days. (Docket No. 33-2 at 21). Either way, and by his own admission, Plaintiff was actually treated by medical staff the day after his fall. (Docket No. 33-2 at 20).

one-sided that one party must prevail as a matter of law." Blizzard, 698 F.3d at 282 (citations and internal quotation marks omitted).

**ANALYSIS**

I.      **Federal Law Claims**

**A. Fourth and Fourteenth Amendment Claims**

As noted at the outset, Plaintiff brings claims under the Fourth, Eighth, and Fourteenth Amendment. His Fourth and Fourteenth claims fail because he did not respond in opposition to Defendants' motion on these claims. See Guarino v. Brookfield Twp. Trustees, 980 F.2d 399, 405 (6th Cir. 1992). Regardless, these claims are not viable because he was not a pretrial detainee for purposes of the Fourteenth Amendment, nor did the alleged incident occur during the course of an arrest or other seizure for purposes of the Fourth Amendment. See Napier v. Madison Cty., Ky., 238 F.3d 739, 742 (6th Cir. 2001); Phelps v. Coy, 286 F.3d 295, 300 (6th Cir. 2002) (citation and internal quotation marks omitted). That leaves Plaintiff's Eighth Amendment claim.

**B. Eighth Amendment Claim**

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. amend. VIII. An Eighth Amendment violation occurs when "[o]fficials are deliberately indifferent to [a] prisoner's *serious* medical needs." See generally Comstock v. McCrary, 273 F.3d 693, 701 (6th Cir. 2001) (emphasis added) (citing Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

An Eighth Amendment claim has both an objective and subjective component. Harrison v. Ash, 539 F.3d 510, 518 (6th Cir. 2008) (citing Farmer v. Brennan, 511 U.S. 825, 833, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). "The objective component requires a plaintiff to prove a

4

'sufficiently serious' medical need, and the subjective component requires a plaintiff to prove . . .

a 'sufficiently culpable state of mind.'" Santiago v. Ringle, 734 F.3d 585, 590 (6th Cir. 2013)

(citing Farmer, 511 U.S. at 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). "Satisfying the

objective component ensures that the alleged deprivation is sufficiently severe, while satisfying

the subjective component 'ensures that the defendant prison official acted with a sufficiently

culpable state of mind.'" Quigley v. Tuong Vinh Thai, 707 F.3d 675, 681 (6th Cir. 2013)

(citation omitted). Plaintiff has failed to raise a genuine issue of material fact as to either

component, let alone both.

## A. Objective Component

At the time of the incident, Plaintiff alleges that his "skin graft condition" (Docket No. 41

at 3, ¶ 1) was "visibly recognizable" (Docket No. 41 at 5, ¶ 1) and "was, or should have been,

apparent to [Defendant] Yohe" (Docket No. 21 at 3) and that these skin grafts on his ankle are a

serious medical condition. "A serious medical need is 'one that has been diagnosed by a

physician as mandating treatment or one that that is so obvious that even a lay person would

easily recognize the necessity for a doctor's attention.'" Harrison 539 F.3d at 518 (citations and

internal quotation marks omitted). Essentially, Plaintiff alleges his condition is "obvious." The

record does not support this contention.

In conducting the "obviousness" inquiry under the Eighth Amendment the Sixth Circuit

in Blackmore v. Kalamazoo Cty., 390 F.3d 890, 897-899 (6th Cir. 2004), found "obvious

manifestations of pain and injury" when a prisoner was suffering from appendicitis. In doing so,

the court observed that "medical needs that are obvious even to a layperson . . . involve life-

threatening conditions or situations where it is apparent that delay would detrimentally

exacerbate the medical problem . . . . " Id. at 897 (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187–88 (11th Cir. 1994)).

What constitutes an objectively "serious medical need" apart from Blackmore has been the subject of multiple other cases. In their memo, Defendants collect a number of them: Boretti v. Wiscomb, 930 F.2d 1150 (6th Cir. 1991) (a three-week old gunshot wound requiring frequent dressing changes); Johnson v. Karnes, 398 F.3d 868 (6th Cir. 2005) (completely severed tendons in one hand, which had only been partially treated by paramedics prior to plaintiff's incarceration); Brown v. Coffee County, No. 4:08-cv-93, 2009 U.S. Dist. LEXIS 119433 (Dec. 23, 2009) (an open, infected, and obviously worsening wound); Phillips v. Roane County, 534 F.3d 531 (6th Cir. 2008) (chest pain, numbness on the left side of plaintiff's body, and being found unconscious, not breathing, with no detectable pulse); Taylor v. Franklin County, 104 Fed. Appx. 531 (6th Cir. 2004) ("obvious signs of recurring incontinence and debilitating immobility"); Harrison,539 F.3d at 518 (asthma attack); Bertl v. City of Westland, No. 07-2547, 2009 U.S. App. LEXIS 2086 (6th Cir. Feb. 2, 2009) (plaintiff observed face down, unresponsive, and suffering from delirium tremens); Maddle v. Corr. Med. Servs., No. 3:05-0306, 2008 U.S. Dist. LEXIS 24703 (M. D. Tenn. Mar. 26, 2008) (plaintiff had abnormal mass in throat creating difficulty swallowing and breathing); and Messner v. Hickman County, No. 1:11-cv-0059, 2013 U.S Dist. LEXIS 167223 (Nov. 25, 2013) (broken femur). In response, Plaintiff cites only the Illinois federal district court decision, in Brazelton v. Myatt, 1999 U.S. Dist. LEXIS 16521, 1999 WL 966435, *5 (N.D. Ill. Oct. 15, 1999), to support his position that Plaintiff's skin grafts satisfied the Eighth Amendment "objective component." However, the court in Brazelton did not state that a skin graft *per se* is objectively serious, but merely preserved the plaintiff's allegation at the "motion to dismiss" stage. Id. at *14-15. There is

6

nothing before the Court to suggest that Plaintiff's skin grafts are an obviously serious medical need.

The Court recognizes that the objective component may also be satisfied based on "the prison's failure to treat a condition adequately", but in such circumstances the prisoner must produce "verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." Santiago v. Ringle, 734 F.3d 585, 590 (6th Cir. 2013) (citations and internal quotation marks omitted). Plaintiff has not done so. He alleges that after his "trip and fall" he "suffered harm in the form of denied medical treatment" (Docket No. 21 at 4), but this is wholly belied by the record. Plaintiff met with medical staff the day after his injury, started on wound care then, and received a "do-not-shackle" order. (Docket No. 37 at 3). Additionally, Plaintiff's SHP file indicates that he was seen by medical staff over twenty times between May 29 and June 24, 2013 (Docket No. 37 at 7-10) and on June 13, 2013, he was transported from the SCCF to Sumner Regional Medical Center for even more wound care. (Docket No. 37 at 2). Plaintiff even admits to having refused medical care. (Docket No. 33-2 at 23).

### B. Subjective Component

Even if Plaintiff could satisfy the objective component, his Eighth Amendment claim fails on the subjective prong. To satisfy the subjective component, which requires a culpable state of mind, a plaintiff must show that "'the official knows of and disregards an excessive risk to inmate health or safety[.]'" Harrison, 539 F.3d at 518 (quoting Farmer, 511 U.S. at 837). While a plaintiff need not prove that the official acted "for the very purpose of causing harm or with knowledge that harm will result,'" Farmer, 511 U.S. at 835, a plaintiff must "show that the official being sued subjectively perceived facts from which to infer substantial risk to the

7

prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001) (citation omitted).

Plaintiff attempts to make this showing by alleging he told Defendant Yohe that he was not supposed to be shackled because of his skin grafts. He also claims that his "trip and fall" was the result of the shackles' chain jerking his legs because the shackles were too tight.

Even if these allegations are true, and assuming that Defendant Yohe was the one who actually shackled him, Plaintiff admittedly did not have a "do-not-shackle" order in his possession. Jail policy dictates that, in the absence of such an order, an inmate is to be shackled unless there is an open cut or open wound. Plaintiff had neither. While another officer may not have shackled Plaintiff or may, as he put it, "insulat[ed] the shackle from [his] grafts," (Docket No. 41 at 7), this does not mean that Defendant Yohe actually perceived a risk of harm and then disregarded it. At most, Plaintiff's allegations suggest mere negligence or an unfortunate accident, neither of which suffices to state an Eighth Amendment claim. See Bowman v. Corr. Corp. of Am., 350 F.3d 537, 544 (6th Cir. 2003) (citation omitted) ("Mere negligence or malpractice is insufficient to establish an Eighth Amendment violation"); Phaneuf v. Collins, 509 F. App'x 427, 431 (6th Cir. 2012) (citation omitted) ("[A] mere accident does not constitute deliberate indifference because it lacks a sufficiently penal-like intent").

## C. Vicarious liability

Because Plaintiff has failed to show that his Eighth Amendment rights were violated by Defendant Yohe, his claims against Defendant Sonny Weatherford, the Sheriff of Sumner County, and Defendant Sumner County Sheriff's Office necessarily fail because "neither a county nor its policy making officials can be held liable when there is no underlying constitutional violation." Fultz v. Whittaker, 187 F. Supp. 2d 695, 709 (W.D. Ky. 2001)

(collecting cases); see, Agema v. City of Allegan, 826 F.3d 326, 331 (6th Cir. 2016) (emphasis added) (stating that "to prevail in a 42 U.S.C. § 1983 suit against a municipality, a litigant must show a constitutional deprivation"); Culliver v. Corr. Corp. of Am., 2000 WL 554078, at *2 (6th Cir. April 28, 2000) (stating that, "as a governmental entity, the sheriff's department can be held responsible for a constitutional deprivation only if there is a direct causal link between a policy or custom of that department and the constitutional deprivation"). Moreover, "[i]t is well-settled that '[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of respondeat superior.'" Peatross v. City of Memphis, 818 F.3d 233, 241 (6th Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009), and, a Tennessee sheriff's department is not a suable entity under Section 1983, Mathes v. Metro. Gov't of Nashville & Davidson Cty., 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) (collecting cases).

## II. State Law Claims

"Generally, 'if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.'" Harper v. Auto Alliance Intern'l, Inc., 392 F.3d 195, 210 (6th Cir.2004) (alterations in original) (citation omitted). "Dismissal is not mandatory, however, because supplemental jurisdiction 'is a doctrine of discretion, not of plaintiff's right.'" Id. In exercising its "broad discretion" to decide whether to continue to exercise pendant jurisdiction over state-law claims, a court can consider such factors as "'the values of judicial economy, convenience, fairness and comity[.]'" Gamel v. City of Cincinnati, 625 F.3d 949, 952 (6th Cir.2010) (citations omitted).

The Court's substantive involvement in this case has been limited to considering the record in relation to whether Plaintiff has established a triable issue on his federal claims.

Although the parties have conducted discovery, "there is no suggestion that the same discovery will not be of benefit to the parties in relation to litigating the state law claim in state court." Staehling v. Metro. Gov't of Nashville and Davidson County, 2008 WL 4279839 at * 13 (M.D.Tenn. Sept.12, 2008). As such, "the concerns of judicial economy, convenience and fairness do not override the accepted principle that purely state law disputes should be decided in state court," and the state law claims will be dismissed. Id.

## CONCLUSION

On the basis of the foregoing, the Motion for Summary Judgment will be granted on Plaintiff's federal claims and his state law claims will be dismissed. A separate Order shall follow.


_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE